IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANKIE N. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 07-896-GPM |
| | ) |
| NURSE VAUGHN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff, a person civilly confined at the Rushville Treatment and Detention Facility, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He seeks damages for alleged deliberate indifference to his medical need (rash in his genital area) by prison staff at the Big Muddy Correctional Center (BMCC) in violation of his Eighth Amendment rights. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the complaint and the supporting exhibits, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915A .

**THE COMPLAINT**

Plaintiff alleges that in December 2005, he filed a request for medical service concerning "a rash in [his] genital area." In response to this request, Plaintiff was taken to Defendants Fred and Vaughn, identified in the complaint as nurses. He claims that Defendants Fred and Vaughn refused to examine him. Despite this, he managed to secure a label for a prescription which he took to Fred. Fred, however, refused to fill the prescription explaining that Plaintiff did not have the correct prescription and should not be using the requested medication. Plaintiff claims that Fred violated his constitutional rights by refusing to refill the prescription.

Plaintiff asserts that in January 2006, he "continued to have discrepancies with his medication" and that it was not until January 24 - 26, that he was able to resolve the problem with his medication which, according to the complaint, was due to his prescription being expired. He states that on February 4, 2006, he was examined by a doctor and re-issued a prescription for Desenex Max.[1]

Plaintiff shaved his genital area in January or February in an attempt to get the prescribed medication in closer contact with his skin.

Plaintiff asserts that on February 8, 2006, Defendant Holmes issued him a "plain white pill

---

[1] Desenex Max is a topical cream used to treat fungal skin infections such as ring worm, athlete's foot, and jock itch.

bottle filled with some kind of cream." Defendant Holmes informed Plaintiff that the cream was Desenex Max and that the pharmacy had received a bulk shipment of the cream in lieu of individual tubes. Plaintiff, however, did not believe Defendant Holmes because Plaintiff had observed other inmates get the same medication in a tube with an unbroken seal.

Plaintiff alleges that on March 26, 2006, he was taken to Dr. Gonzales and was attempting to explain to her how his rash had "progressed and regressed." He alleges that "Dr. Gonzales insisted that there was no problem that she could notice, but then again, she also refused to look with enough earnestness and concern to confirm [Plaintiff's] complaint."

Plaintiff alleges that on April 3, 2006, he was examined by Defendant Newberry, who noted no rash but observed that Plaintiff had been scratching the area. Newberry then referred Plaintiff to a doctor. Plaintiff states that on April 11, 2006, a nurse McCormick (not a defendant) noted the presence of a rash.

Plaintiff contends that shortly thereafter he was placed in the administrative segregation unit where he observed that the rash was spreading down his thighs and up to his waist. He claims that between April 13 and April 15, 2006, he submitted several medical request slips concerning his need for treatment but that he was not provided any medical treatment He further contends that several entries in his medical file indicating that he received medical treatment during this time are fictitious entries made by Defendants Newberry and George.

Plaintiff complains that on April 18, 2006, he was examined by a Licensed Practical Nurse (LPN), not a registered nurse.

Plaintiff states that on April 20, 2006, he spoke to Defendants Hilliard and Bradford and that they arranged for Plaintiff to be taken to the health care unit. Plaintiff alleges that Defendants Fred and George observed his rash and stated that Plaintiff must have shaved the area or scratched it for

it to become inflamed.

Plaintiff alleges that on April 24, 2006, he was examined by Defendant Shepherd who prescribed him miconazole nitrate[2] 2% cream to be used topically twice daily until May 24, 2006. Plaintiff claims that Defendant Ford did not give him his medication on May 6 because she could not find Plaintiff's medical chart. Plaintiff further alleges that Defendant Cochrane did not give him his medication on May 10 because Defendant Holmes had failed to order it . Consequently, Plaintiff alleges that he went without his medication through May 25.

Plaintiff alleges that during the period May to December 2006, he asked Defendants Shepherd, several "John Does," Larson, Feinerman, Chhabra, and Sallah for a "skin culture and referral to [a] dermatologist," but these defendants each refused to take the culture or make the referral.

Finally, Plaintiff alleges that Defendants Chapman, Ford, and Walker, found that his grievances concerning his medical care were without merit based on the record that Plaintiff had been examined by medical staff on several occasions and the medical staff's notation that Plaintiff had probably aggravated his condition by shaving his genital area.

### DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106; *see also*

---

[2]Miconazole nitrate is used to fight fungal infections such as athlete's foot, ringworm, and jock itch.

*Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S. Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id*.; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996).

In the instant case, Plaintiff suffers from a recurring rash in his genital area. This could be annoying and even uncomfortable but hardly serious, let alone life threatening. When the rash has been present, Plaintiff has, in some cases, been examined by nurses and doctors and prescribed anti-fungal medication. From time to time, Plaintiff has not received his anti-fungal medication as prescribed. One time the failure to give Plaintiff his anti-fungal medication was because the prescription appears to have expired. Another time it was due to the failure of prison staff to order the medication. On another occasion, it was due to the inability of medical staff to locate Plaintiff's chart which would instruct them to give Plaintiff the medication he sought. In yet another instance, Plaintiff did not trust the distribution of his medication from a bulk source (in lieu of individual tubes). These instances do not evidence "deliberate indifference" to Plaintiff's need for medication so much as evidence potential neglect or bureaucratic foul-ups. None of these instances rise to the level of a constitutional violation. The failure of the pharmacy technician to order Plaintiff's medication, for instance, is potentially negligence in the performance of duties, but it hardly

constitutes a reckless disregard for Plaintiff's specific medical need. Therefore, Plaintiff's claims against Defendant Holmes and Cochrane for failing to dispense his medication are dismissed.

In other cases, however, the failure to provide Plaintiff with medical treatment and to give Plaintiff his medication is unexplained. Specifically, the Court takes note of the alleged failure of Defendants Vaughn, Fred, Newberry, and George to examine or otherwise provide medical treatment to Plaintiff in December 2005 and during the time period April 13 through April 15, 2006. In these instances, however, the complaint indicates that medical treatment and medication were merely delayed, not completely denied. That is, within a few days or weeks, Plaintiff was examined by a doctor or received his medication. Beyond the embarrassment of having a rash, Plaintiff does not allege any detriment from these various delays in treatment. *See Williams v. Liefer*, 491 F.3d 710 (7th Cir. 2007) (when medical care is delayed – rather than denied – the delay must have caused some detriment). There is no indication that the delay in treatment harmed Plaintiff. Accordingly, Plaintiff's claim that Defendants Vaughn, Fred, Newberry, and George deprived him of adequate medical treatment in violation of his Eighth Amendment rights are dismissed.[3]

The alleged failure of Defendant Gonzales to conduct an "earnest" examination of Plaintiff's rash and the alleged denial of Plaintiff's numerous requests for a skin culture and referral to a dermatologist is merely a difference between Plaintiff and his doctors. Such a difference does not rise to the level of an Eighth Amendment violation. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Therefore, Plaintiff's claims against Defendants Gonzales, Shepherd, Dr. John Does 1 - 3,

---

[3]The Court notes that Plaintiff also alleges that these Defendants made false entries concerning the medical care provided to him during the time period April 13 to April 15, 2006. While the Court does not condone such actions, the mere making of false entries does not rise to the level of a constitutional violation. Despite these false entries, Plaintiff alleges that he was examined by an unnamed LPN on April 18, 2006, by Defendants Fred and George (nurses) on April 20, 2006, and by Defendant Shepherd (a medical doctor) on April 24, 2006.

Larson, Feinerman, Chhabra, and Sallah are dismissed.

With respect to Defendants Bradford and Hilliard, Plaintiff's only allegation is that he was "finally taken to health care" after talking to them in the administrative segregation unit on April 20, 2006. Consequently, there is no indication that these Defendants denied Plaintiff adequate medical care for his condition. Furthermore, these Defendants are not vicariously liable for the alleged actions of their subordinates in denying Plaintiff access to medical care or medication. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). Therefore, Plaintiff's claims against Defendants Bradford and Hilliard are dismissed.

With regard to Defendants Chapman, Ford, Walker, and Isaacs, the gravamen of Plaintiff's allegation is that these Defendants denied his grievances because they found – based on assertions made to them by medical staff – that (1) Plaintiff's condition did not warrant immediate attention; (2) Plaintiff had been provided with medical care on several occasions; and (3) Plaintiff's condition was most likely aggravated by the shaving of his genital area. These allegations do not state a claim for deliberate indifference to Plaintiff's medical needs. Prison officials who are not medical professionals are entitled to rely on the opinion of medical professionals. *See Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). Here the complaint indicates that Defendants investigated Plaintiff's claim and deferred to the medical professionals' opinions. Therefore, Plaintiff's claims against Defendants Chapman, Ford, Walker, and Isaacs are dismissed.

Plaintiff's claim against "Nurse/Doctor (Jane/John Doe) 4" is dismissed. The Court can find no allegation specifically against this "Nurse/Doctor (John/Jane Doe) 4" in the complaint. Thus, Plaintiff has failed to allege how this Defendant is personally and causally connected to the alleged deprivation of his constitutional rights. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)

(plaintiff cannot state a claim against a defendant by including the defendant's name in the caption).

If this Defendant is also alleged to have denied Plaintiff a skin culture or referral to a dermatologist,[4] then, as explained above, such an allegation indicates only a mere difference in opinion over Plaintiff's treatment. *Snipes v. DeTella*, 95 F.3d at 591.

### DISPOSITION

In summary, Plaintiff's complaint does not survive review under § 1915A. Accordingly, this action is **DISMISSED** with prejudice, and judgment will enter accordingly. Plaintiff is advised that the dismissal of this action will count as a strike under the provisions of 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**

DATED: 07/08/2008

s/ G. Patrick Murphy
G. Patrick Murphy
United States District Judge

---

[4]The caption of the complaint names a total of 4 Doe defendants. The complaint, however, contains allegations against possibly as many as 6 Doe defendants (paragraphs 48 to 54 of the complaint). Each of the Doe Defendants is alleged to have denied Plaintiff a skin culture and a referral to a dermatologist.